IN RE IVEY & ELLINGTON, INC.

*New Castle, May 14, 1945.*

*Caleb S. Layton,* of Richards, Layton & Finger, for petitioner.

*Clarence A. Southerland* and *Collins J. Seitz,* of Southerland, Berl & Potter, for defendant.

HARRINGTON, Chancellor: There has been no corporate election since February 1st, 1943, and the petitioner's right to a summary order, directing that a stockholders' meeting be held for the election of directors, is not denied. The sole question is whether three or five directors shall be elected at that meeting. The by-laws provide that a stockholders' meeting shall be held on February 1st of each year and that only three directors shall be elected. At the meeting held February 1st, 1943, five directors, including Ivey and Ellington, were, however, elected, and all but one have continued to act as such. Both Ivey and Ellington participated in the election by voting their stock, but it seems that the original suggestion that five directors be elected was made by Ivey.

Before the election both stockholders joined in a written notice to T. S. Strong and T. M. Keresey that they would be elected directors of the corporation at the subsequent stockholders' meeting, and offered to sell each of them a small amount of stock, but that was never done. There was nothing to indicate how many members the stockholders intended to elect. Moreover, no express resolution to amend the by-laws was offered, or acted on, at the stockholders'

meeting, and it does not appear that their provisions were considered or mentioned at that time. The attorney for the corporation had attended all prior annual stockholders' meetings, and no more than three directors had ever been elected at any of them; he was not present at the meeting of February 1st, 1943, and the reasonable inference is that the pertinent by-law was entirely overlooked. The new board organized on that date and all of the members but George V. Strong were present. Ivey presided and was elected president of the corporation. Directors' meetings were also held on June 7th, 1943, January 20th, 1944, November 20th, 1944 and December 22nd, 1944, respectively, at each of which a quorum was present, and waivers of notice signed by all of the alleged directors were presented. Ivey attended those meetings and presided at the first two, but his resignation, as president of the corporation, was accepted at the November 20th meeting.

George V. Strong, one of the five directors, was in the United States Army during the entire period and did not attend any of the meetings. He seems to have resigned later, but his letter of resignation is not dated. T. M. Keresey was also in the army, but attended all of the directors' meetings. After February 1st, 1943, there were disagreements between Ivey and Ellington, and on July 24th, 1944 Ivey wrote a letter, addressed to Thomas M. Keresey, T. S. Strong and Jesse T. Ellington, three of the directors voted for at the February 1st meeting, which, in part, stated:

"In reading the by-laws of Ivey & Ellington last week, I noticed that the by-laws specifically call for three Directors, and in order to increase the number of Directors it is necessary, either at an annual meeting, or at a called meeting, for the stockholders to amend the by-laws, calling for an increase in the number of Directors.

"At the annual meeting of February 1943, Messrs. Strong and Keresey were elected Directors, but the by-laws covering an addition to the Board of Directors were not amended and therefore their election as of February 1943 was illegal.

"The writer suggests that Mr. Ellington as a stockholder, if he wishes, write a letter to the Company asking that a special meeting of the stockholders be held and naming in that letter the specific matters to be voted on by the stockholders in addition to the question of Directors.

"The President will then call a meeting of the stockholders in accordance with our charter and allow the stockholders to vote, first on the question of increasing the number of Directors, and, secondly, if the number of Directors is to be increased, who shall be elected."

Ellington did not adopt Ivey's suggestion and did not testify at the hearing.

The sole question to be determined is whether the corporate by-laws were impliedly amended by the action taken by the two stockholders in electing five directors on February 1st, 1943. Neither the powers of *de facto* officers nor the rights of third persons are in any way involved. The question is purely an intra-corporate one.

Ivey, after his letter of July 24th, 1944, took no immediate steps to have the disputed question determined, but the minutes show that at the board meeting of November 20th, 1944 he stated that "there was a question of the legality of the election and qualification of Messrs. T. S. Strong and T. M. Keresey as directors which would have to be settled according to law".

Ordinarily, a corporate by-law may be amended by implication and without any formal action being taken by clear proof of a definite and uniform custom or usage, not in accord with the by-laws regularly adopted, and by acquiescence therein; but usually the course of conduct relied on to effect the change must have continued for such a period of time as will justify the inference that the stockholders had knowledge thereof and impliedly consented thereto. *Star Loan Ass'n. v. Moore,* 4 *Pennewill* 308, 55 *A.* 946; *Buck v. Troy Aqueduct Co.,* 76 *Vt.* 75, 56 *A.* 285; *Bay City Lumber Co. v. Anderson,* 8 *Wash.2d* 191, 111 *P.2d* 771; *Fletcher Ency. Corp.,* (*Perm.Ed.*) § 4179; *Thompson Corp.,* (3rd *Ed.*) § 1088. In other words, as is pointed out in *Star Loan*

*Ass'n. v. Moore, supra,* the existence of by-laws "may be established by custom, or by acquiescence in a course of conduct by those authorized to enact them" [4 *Pennewill* 308, 55 A. 948]; and the same principle, necessarily, applies to an alleged amendment. Unanimous consent by the stockholders to a regular course of action, inconsistent with the by-laws regularly adopted, may, therefore, justify the conclusion that an amendment thereto was intended. *Buck v. Troy Aqueduct Co., supra; Bay City Lumber Co. v. Anderson, supra.* The same rule applies when a by-law provides for a board of a certain number but, by the unanimous consent of the stockholders, the corporation has acted for a number of years through a board having a smaller number. *Buck v. Troy Aqueduct Co., supra;* 14 *A.C.J.* 50, 19 *C.J.S., Corporations,* § 716. But in a particular case, the question is always largely one of fact. *Thomp. Corp.,* (3rd Ed.,) § 1091; *Union Bank of Maryland v. Ridgely,* 1 *Har. & G. (Md.)* 324.

The corporate defendant claims that as both stockholders participated in the election, contrary to the by-laws, no proof of custom or usage is necessary to show acquiescence in the alleged resulting amendment. Where, as here, but one inconsistent act is relied on it does not appear that the stockholders were actually aware of the by-law provision, an intent to amend is not demonstrated. The attendance by both stockholders at the subsequent directors' meetings has little bearing on the precise question.

Furthermore, estoppel cannot be relied on in determining how many directors shall be elected at the contemplated stockholders' meeting.

The prayer of the petitioner will, therefore, be granted and a master appointed to conduct the corporate election of three directors.

A decree will be entered accordingly.