ROBERT HAYS GRIES,

Plaintiff,

SEYMOUR LEVIEN and FRANCIS S. LEVIEN,

Intervening Plaintiffs,

*vs.*

EVERSHARP, INC., a corporation of the State of Delaware,

Defendant.

*New Castle, June 28, 1949.*

*Hugh M. Morris* and *Edwin D. Steel, Jr.*, of the firm of Morris, Steel, Nichols & Arsht, for plaintiff.

*Clarence A. Southerland* and *David F. Anderson,* of the firm of Southerland, Berl & Potter, for intervening plaintiffs.

*Aaron Finger*, of the firm of Richards, Layton & Finger, and *Daniel O. Hastings,* of the firm of Hastings, Stockly, Walz & Wise, (Alley, Cole, Grimes & Friedman, of New York City, of counsel), for defendant.

SEITZ, Vice Chancellor: The original plaintiff and the intervening plaintiffs are the owners of common stock of the defendant corporation, Eversharp, Inc., a Delaware corporation. The plaintiff's combined complaint and petition for declaratory judgment as amended contains four counts. The theory of each count and the determination of plaintiff's motion for judgment on the pleadings—here being decided —can best be understood by a chronological narration of the undisputed facts culled from the papers pertinent to the determination of such a motion.

Sections 4 and 5 of the by-laws of defendant provide as follows:

"4. All meetings of the stockholders for the election of directors shall be held at the office of the corporation in Chicago, Illinois. Special meetings of stockholders for any other purpose may be held at such place and time as shall be stated in the notice of the meeting.

"5. An annual meeting of stockholders, after the year 1940, shall be held on the third Tuesday of May in each year if not a legal holiday, and if a legal holiday, then on the next secular day following, at 11:00 o'clock A.M., when they shall elect by a plurality vote, a board of directors, and transact such other business as may properly be brought before the meeting."

By virtue of Sections 4 and 5 of the by-laws, the time

and place for the holding of the defendant's annual meeting of stockholders for the election of directors for 1949 should have been at 11:00 A. M. on the third Tuesday of May, being May 17, 1949, at the office of the corporation in Chicago, Illinois.

Sections 6 and 8 of the defendant's by-laws provide as follows:

"6. The holders of a majority of the stock issued and outstanding, and entitled to vote thereat, present in person, or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of the stockholders for the transaction of business except as otherwise provided by statute, by the certificate of incorporation or by these by-laws. If however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person, or by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. At such adjourned meeting at which a quorum shall be present any business may be transacted which might have been transacted at the meeting as originally notified.

\*  \*  \*  \*  \*  \*

"8. Written notice of the annual meeting shall be served upon or mailed to each stockholder entitled to vote thereat at such address as appears on the stock books of the corporation, at least 10 days prior to the meeting."

At a board of directors' meeting held on March 3, 1949 certain persons were named to act as attorneys in fact and proxies to attend the annual meeting "to be held Tuesday, May 17, 1949, or any adjournment". At the same meeting, a motion was adopted fixing the close of business on April 22, 1949 as the record date "for determination of stockholders entitled to notice of and to vote at the regular annual meeting of stockholders to be held on May 17, 1949, at 11:00 A.M."

The defendant gave no notice of an annual meeting for May 17, 1949, and thus did not comply with the written

notice requirement provided for in Section 8 of the by-laws.[1] Instead, at a meeting of the board of directors held on May 2, 1949, a resolution was adopted changing the date of the annual stockholders' meeting to May 24 at the same time and place. No mention was made in the minutes of the record date. A committee was appointed with full power to send the stockholders notice of the meeting date, proxies, etc. The directors changed the date because of difficulties in assembling the necessary data for inclusion in the proxy statement in time for the giving of notice for the May 17 meeting, as well as because of a request of Francis Levien, who is an intervening plaintiff here.

On May 11 the defendant mailed notices of the May 24 meeting to the stockholders, along with a management proxy, and stated therein that only holders of common stock of record at the close of business on April 22, 1949 were entitled to notice of and to vote at such meeting. Based on the pleadings, it is clear that at least up to the time of the May 2 directors' meeting, the directors had not closed the stock transfer books or fixed a record date for determining stockholders entitled to notice of or to vote at the meeting fixed for May 24, unless, as defendant contends, the April 22 record date fixed with respect to the May 17 annual meeting date, continued operative as to the May 24 meeting.

Section 43 of the defendant's by-laws reads as follows:

"43. The board of directors shall have power to close the stock transfer books of the corporation for a period not exceeding fifty days preceding the date of any meeting of stockholders or the date for payment of any dividend or the date for the allotment of rights or the date when any change or conversion or exchange of capital stock shall go into effect or for a period of not exceeding fifty days in connection with obtaining the consent of stockholders for any purpose; provided,

---

[1] The parties are in disagreement as to whether the pleadings indicate a denial of the allegation that no notice of the May 17 meeting was given. All parties concede that in fact no written notice was given and I shall proceed on that assumption.

however, that in lieu of closing the stock transfer books as aforesaid, the board of directors may fix in advance a date, not exceeding fifty days preceding the date of any meeting of stockholders or the date for the payment of any dividend, or the date for the allotment of rights, or the date when any change or conversion or exchange of capital stock shall go in effect, or a date in connection with obtaining such consent, as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting, and any adjournment thereof, or entitled to receive payment of any such dividend, or to any such allotment of rights, or to exercise the rights in respect of any such change, conversion or exchange of capital stock, or to give such consent, and in such case such stockholders, and only such stockholders as shall be stockholders of record on the date so fixed, shall be entitled to such notice of, and to vote at, such meeting and any adjournment thereof, or to receive payment of such dividend, or to receive such allotment of rights, or to exercise such rights, or to give such consent, as the case may be, notwithstanding any transfer of any stock on the books of the corporation after any such record date fixed as aforesaid."

It may be noted that this by-law follows the language of *Section* 17 of the *General Corporation Law, Rev.Code* 1935, § 2049. Under this section the authority to fix the record date may be given the directors by a by-law provision, or the date may be fixed in the by-law. Here the former course was followed.

On May 17, 1949, at 11:00 A. M. in the offices of the defendant in Chicago, Illinois—being the time and place fixed by the by-laws for the annual meeting—persons met holding in person or as proxies approximately 90,000 shares of the defendant's common stock entitled to vote at said meeting for the purpose of holding the annual meeting of stockholders. None of the proper corporate officers being present to preside, the stockholders elected one of those present to act as chairman of the meeting. It being determined that no quorum was present, the stockholders entitled to vote thereat voted to adjourn the meeting to a designated future time and place. For purposes of clarity and identification, I shall designate this as the "opposition" meeting. No written notice of the May 17 meeting was given the stockholders despite the by-law requirement.

The "management" group, of course, had by that time noticed the annual meeting for May 24.

On May 19, 1949, plaintiff filed the present complaint which in substance called upon the court to determine the legality of the May 17 and the then forthcoming May 24 meetings.[2]

A preliminary injunction was entered preventing the holding of the May 24 meeting, except for the purpose of adjourning the meeting to a future date in order that the issues might be resolved. Subsequently, plaintiff filed an amended motion designated as a motion for judgment on the pleadings, and stipulated that the determination of the motion would be accepted as the final judgment of this court. The defendant has agreed to the determination of the motion based on the complaint and answer as amended, supplemented by the affidavit showing certain of the defendant's by-laws and the minutes of the directors' meeting of May 2, 1949. This is the determination of the plaintiff's motion.

Plaintiff's amended complaint contains 4 counts. The first count, in effect, alleges that the May 17 meeting—the opposition meeting—was duly held and duly adjourned, and that in consequence the May 24 meeting was an invalid attempt to hold an annual meeting. Also in this count, plaintiff alleges that the May 24 meeting violated *Section 30* of the *General Corporation Law, Rev. Code* 1935, § 2062, because less than 20 days' notice was given to the stockholders; and that the action of the directors on May 2 in fixing May 24 as the time for the annual meeting violated *Section* 30 of the *Corporation Law* because such action took place within 60 days prior to May 17, the date fixed by Section 5 of the by-laws for the election of directors.

The second count alleges fraudulent representation in

---

[2] The charge of fraudulent solicitation of proxies by the management was included, but its importance is discussed subsequently herein.

connection with the solicitation of the management proxies. The defendant's answer puts this count squarely in issue and under the present motion, the allegation contained in this count cannot be decided. Plaintiff's motion for judgment on the pleadings must be denied as to this count.

In the third count plaintiff alleges that the notices of the May 24 meeting mailed on May 11 did not under the circumstances afford the contesting groups an adequate opportunity to solicit the stockholders. As a corollary, plaintiff contends that the by-laws specified no time for notice of the May 24 meeting—not being on the annual meeting date—and that the notice actually given was insufficient.

In the fourth count plaintiff alleges that because the stock transfer books were not closed on April 22, and since the directors did not fix April 22, in advance, as the date for determining stockholders entitled to notice of and to vote at the May 24 meeting, the statement in the notice that April 22 had been fixed as the record date for the May 24 meeting was false and misleading. Plaintiff's arguments on this point may be quoted from his amended complaint:

"(a) Such statement is a representation to stockholders that stockholders of record on April 22, 1949 will be entitled to vote even though they are not stockholders of record at the time of the election and for a period of twenty days prior thereto, whereas under Section 17 of the Delaware Corporation Law stockholders are entitled to vote at the meeting only if they are stockholders of record twenty days next preceding the election of directors and maintain such status at all times until the election.

"(b) Such statement amounts to a representation to stockholders that stockholders who were not holders of record on April 22, 1949 will not be entitled to vote, whereas under Section 17 of the Delaware Corporation Law persons who are stockholders of record on the twentieth day next preceding the date of the election and maintain such status until the election are entitled to vote."

Plaintiff also alleges in this count that the notice of the May 24 meeting was unreasonable and illegal.

Let us first consider whether the May 17 meeting held by the opposition group constituted a valid annual meeting which was duly adjourned for lack of a quorum.

Plaintiff's brief tacitly concedes that generally there must be compliance with a by-law providing for written notice of the annual meeting, else the meeting is invalid. Plaintiff contends, however, that the written notice provision is for the benefit of the stockholders, and no stockholder has come forward to object to the failure to receive written notice of the May 17 meeting. Moreover, plaintiff points out that at the May 17 meeting no action was taken because of the lack of a quorum, and that the stockholders were given written notice of the adjourned date by the opposition group. In consequence, plaintiff urges that there was no prejudice to the stockholders because of the failure to comply with the by-law provision regarding notice. Plaintiff contends that the defendant corporation is in no position to object to the failure to comply with the by-law provision because it is not a stockholder, and the failure to give notice came about through the neglect of the corporation itself.

The Delaware District Court in the case of *In re Mississippi Valley Utilities Corporation*, 2 *F. Supp.* 995, concluded in applying Delaware law that an annual stockholders' meeting was invalid where there had been a failure to comply with the by-law provision requiring written notice of the annual meeting. Plaintiff contends the case is distinguishable in two particulars. First, in the *Mississippi Valley.* case action of importance to stockholders had been taken at the meeting for which no notice was given. Such is not the case here. Second, in the *Mississippi Valley* case the meeting was attacked by a stockholder who was entitled to notice, whereas in the case at bar, no stockholder has questioned the validity of the May 17 meeting.

Conceding that the *Mississippi Valley* case is distinguishable in the two particulars mentioned, nevertheless, I

do not believe that the existence of the distinctions requires a different conclusion with respect to the legality of the opposition meeting. The duty to send notices of such a meeting is imposed on the management of the corporation. True, the management failed to comply with the by-law, but that does not alter the fact that such notice was important, was required, and was for the benefit of all of the stockholders.

While ordinarily a court will not permit a person to gain advantage from his own dereliction, I believe that principle is inapplicable here because we are concerned primarily with the right of all stockholders to be given notice of a meeting to elect directors. Where an attempt is made to hold such a meeting without notice, I believe the corporation is under a duty to point out that the by-law provision adopted for the benefit of the stockholders was not carried out. So viewed, the corporation may object to the lack of compliance with this by-law. The reasons assigned in the pleadings for the delay do not in and of themselves reflect on the good faith of the management in changing the date. I do not mean to imply, however, that the management's reasons for the change necessarily reflect credit on its judgment.

Plaintiff's argument that there is no prejudice because the opposition meeting was adjourned, and the stockholders notified of the adjourned date does not appeal to me. The duty to call the meeting and to notice the stockholders is upon the management of the corporation, and absent very unusual circumstances, the management must be the one to implement the by-law provisions. Compare *Section* 31 of the *General Corporation Law, Rev. Code* 1935, § 2063. A reasonable semblance of orderliness in corporate affairs is highly desirable. The reasons for changing the annual meeting date are not so extreme as to require the conclusion that the notice provisions of the by-laws should be ignored, and the action of a group outside the board of directors here recognized.

I, therefore, conclude that the opposition meeting held on May 17 was invalid because no written notice of the meeting was given to the stockholders by the corporation as provided for in Section 8 of the by-laws. It follows that the May 24 meeting was not invalid because of the holding of the May 17 meeting by the opposition.

As an alternative theory in his first count, plaintiff contends that the May 24 meeting was invalid for two reasons, one, it violated *Section* 30 because less than 20 days' notice was given the stockholders, and two, the action of the directors on May. 2 in fixing May 24 as the time for the annual meeting violated *Section* 30 because such action took place within 60 days prior to May 17, the by-law date for the annual meeting.

Plaintiff's contentions would call upon this court to re-examine the construction placed on *Section* 30 of the *General Corporation Law* by Chancellor Wolcott in the case of *In re Tonopah United Water Co.,* 16 *Del. Ch.* 26, 31, 139 *A.* 762, since he there stated that the 60 day and the 20 day provisions of *Section* 30 were operative only when the standing by-law provision is proposed to be altered. Plaintiff contends that the court's conclusion, at least as to the 20 day provisions of *Section* 30, was clear obiter. Defendant says the court had to construe *Section* 30 in order to determine that its provisions were inapplicable.

I conclude that the fixing of a date subsequent to the date fixed in the by-laws for the annual meeting of stockholders did not constitute an amendment of the by-law dealing with the time of the holding of the annual meeting. My conclusion is based on the fact that no formal attempt was made to amend the by-law, and the minutes themselves negative such an attempt. Moreover, the reasons for the fixing of the later meeting date evidence no intent to make the change permanent. Compare *In re Ivey & Ellington, Inc.,* 28 *Del. Ch.* 298, 42 *A.* 2d 508. The fact that the meeting was to elect certain directors to serve terms of more

than one year, if inconsistent, does not constitute such an inconsistency here as to warrant the conclusion that the by-laws were amended.

In consequence, plaintiff's contentions as to the need for 20 days' notice must be rejected, unless the construction placed on *Section* 30 by Chancellor Wolcott in the *Tonopah* case is to be rejected. After due consideration of the Chancellor's opinion in the *Tonopah* case, and in the light of the number of years the statute has stood subject to the construction he placed thereon—over 20 years—I am inclined to accept and adopt the conclusion of the court in the *Tonopah* case as it relates to the 60 day limitation and the 20 day notification periods in *Section* 30.

I conclude that the 60 day and the 20 day time provisions of *Section* 30 apply to formal by-law changes. I further conclude that the changing of the annual meeting date here did not constitute an amendment of the by-laws within the contemplation of *Section* 30. Consequently, the May 24 meeting was not invalid for want of compliance with *Section* 30.

In his fourth count plaintiff attacks the legality of the May 24 meeting on the ground that it violates *Section* 17 of the *General Corporation Law* because no record date had been fixed in advance for determining stockholders entitled to notice of and to vote at the May 24 meeting. As previously pointed out, *Section* 43 of the defendant's by-laws pursuant to power given by *Section* 17 of the *Corporation Law* authorized the directors to "fix in advance a date, not exceeding fifty days preceding the date of any meeting of stockholders * * * as a record date for the determination of the stockholders entitled to notice of, and to vote at, any such meeting, and any adjournment thereof." It will be recalled that the directors at their March 3 meeting fixed April 22 as the record date for determining stockholders entitled to notice of and to vote at the annual meeting to be held on May 17. On May 2 the board of directors changed

the date of the annual meeting from May 17 to May 24. The minutes of the May 2 meeting contain no reference to a record date.

Defendant contends that the record date fixed at the March 3 directors' meeting continued in full force and effect. It argues that since only one thing, to wit, the meeting date of the annual meeting had been changed, the March 3 resolution was in all other respects in full force and effect since it dealt with the annual meeting. The notices actually sent out by the management for the May 24 meeting were apparently premised on this assumption. If the defendant's contention is sound, it becomes unnecessary to consider certain matters raised by virtue of the status of the pleadings with respect to this issue. This is so because if the record date fixed by the directors on March 3 is recognized as a valid record date for the May 24 meeting, then there was full compliance with the provisions of *Section* 17 of the *General Corporation Law,* even as plaintiff would have it construed.

It is clear from a reading of the minutes of the directors meeting on March 3 that they were fixing the record date for the annual meeting. The date of the annual meeting could then be definitely fixed because the corporate by-law by its terms identified a then ascertainable date for the holding of the meeting. On this difficult point I am inclined to the belief that the emphasis should be placed on the fact that the record date was fixed for the annual meeting. The record date is important, but it did not have to be at a fixed time. When the directors changed the annual meeting date, I do not believe our law required them to fix a new record date so long as the record date theretofore fixed, when applied to the new date, complied with the time provisions of *Section* 17 and the corporate by-laws. As stated, I reach this conclusion because I think primary emphasis should be placed on the fact that it was a record date for the annual meeting, and was thereafter recognized by the management

as the record date for the annual meeting as thereafter called. Indeed the minutes of the March 3 meeting were reviewed at the May 2 meeting. No question of bad faith based on the retention of the same record date is here involved.

I conclude, therefore, that the record date fixed on March 3 was the record date for the annual meeting despite the fact that the annual meeting date as called for in the by-laws and as mentioned in the March 3 resolution was thereafter changed by the directors. In the light of my conclusion that the action of the directors on March 3 in fixing the record date is to be considered as applicable to the May 24 meeting, and since that record date was therefore fixed in advance and was less than 50 days before the date of the meeting, it follows that the May 24 meeting was not invalid for failure to comply with *Section* 17 of the *Corporation Law and* Section 43 of the by-laws.

We come finally to plaintiff's third count to the effect that the notice of the May 24 meeting was unreasonably short.

The time and place for the annual stockholders' meeting was fixed in the by-laws. The directors, after fixing a record date for voting at such meeting, saw fit thereafter to call the annual meeting for a later date. As I read Chancellor Wolcott's opinion in the *Tonopah* case, he held that in the case of an annual stockholders' meeting held after the date fixed in the by-law for such meeting "its convening obtains sanction from *Section* 31, and is in no sense to be regarded as an annual meeting provided for by *Section* 30, nor is it governed by the regulations therein defined." [16 *Del. Ch.* 26, 139 *A.* 764] He concluded, as I have done in this case, that the change of the meeting date was not an attempt to amend the annual meeting date fixed by the by-laws.

Plaintiff argues that this was not a *Section* 31 meeting and that the *Tonopah* case is distinguishable because at the time the Tonopah directors changed the meeting date

they could not have complied with the 20 day written notice requirement, whereas here the required 10 days' notice could still have been given when the directors on May 2 changed the date to the 24th. In consequence, plaintiff claims that the reason given in the *Tonopah* case for the conclusion that *Section* 31 applied does not exist here.

I reject such an interpretation because I believe it would leave an undesirable hiatus in the legal duty of directors to hold the annual meeting as soon as possible, where it has not held or cannot hold the meeting on the designated date. I do not believe a search for the proper appellation for this meeting (i. e., annual, special, etc.) would be of profit here. The directors were under a duty to call the annual meeting and this they did. The fact that they called it at a time when they could still have complied with the provisions of the by-laws fixing the annual meeting date does not alter the hard fact that they called the meeting for another date. At the time legal attack was made on the new meeting date, the time for compliance with the by-law meeting date had passed. I do not believe that a meeting called under such circumstances is invalid merely because it will not perhaps fit into the explicit language of *Section* 31. To so conclude would be to say that if called and held later it would have been valid because of *Section* 31, but because the delay was shorter the duty imposed by *Section* 31 is inapplicable.

Plaintiff urges, however, that the notice actually given of the May 24 meeting was unreasonably short in that such notice was not mailed until May 11. Defendant says that this issue cannot be here decided because the plaintiff's allegation concerning the reasonableness of the notice is denied. I prefer to dispose of the issue on its merits.

Section 8 of the defendant's by-laws provides for the service upon or mailing of written notice to the stockholders at least 10 days prior to the meeting. It thus appears that insofar as the May 24 meeting was concerned there was com-

pliance with Section 8 of the by-laws providing for the giving of 10 days' written notice of the annual meeting.

It is suggested that since the management has seen fit to change the annual meeting date provided for in the by-laws, the court is entitled to inquire into the reasonableness under the circumstances of the notice actually given of the new meeting date, even though it would have been sufficient had the meeting been held on the by-law date.

Where the management has seen fit to change the annual meeting date fixed in the by-laws, I shall assume, without deciding, that the court may in a proper case inquire into the reasonableness of the notice actually given in the light of the circumstances surrounding the change. However, I do not believe the present factual situation necessitates any finding that the notice was unreasonably short. I reach this conclusion based on the existence here of the following factual considerations: (1) the notice of the May 24 meeting actually given would have been sufficient had the annual meeting been held on the by-law date; (2) the reasons for changing the annual meeting date do not pose any issue of bad faith on the part of the management; and (3) the meeting was in fact adjourned, albeit by judicial direction, and it is agreed that the court will fix the date for the calling of the adjourned meeting for which both groups may solicit proxies—hence no prejudice of the sort that might otherwise be important.

I, therefore, conclude that the May 24 meeting was not invalid for lack of reasonable notice.

I conclude that the May 24 meeting was validly called and validly adjourned. Under the stipulation this is the final judgment. I direct the defendant to fix July 15, 1949 as the further adjourned date for the 1949 annual meeting.

An order accordingly will be entered on notice.

Note. The order entered in accordance with the foregoing opinion was reversed by the Supreme Court on appeal, and remanded for disposition in conformity with the opinion reported *post* p. 489; 69 A. 2d 922