# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PAUL A. ROSENBAUM, JEFFREY R. )
BEATY, and ARTHUR L. WILMES, )
                               )
          Plaintiffs, )
                               )
          v. )        **C.A. No. 2021-0728-JRS**
                               )
CYTODYN INC., SCOTT A. KELLY, )
NADER Z. POURHASSAN, JORDAN )
G. NAYDENOV, ALAN P. TIMMINS, )
SAMIR R. PATEL, and GORDON A. )
GARDINER, )
                               )
          Defendants. )

## ORDER DENYING PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL

**WHEREAS**, on October 13, 2021, the Court entered a Post-Trial Memorandum Opinion (the "Opinion") rejecting Plaintiffs' claim that Defendants breached the advance notice bylaw within the bylaws of CytoDyn Inc. ("CytoDyn" or the "Company") and denying Plaintiffs' request for declaratory and injunctive relief;[1]

---

[1] *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4775140 (Del. Ch. Oct. 13, 2021) ("Opinion").

**WHEREAS**, on October 15, 2021, Plaintiffs, Paul A. Rosenbaum, Jeffrey P. Beaty and Arthur L. Wilmes, moved for an injunction prohibiting Defendants from proceeding with the Company's annual meeting pending appeal (the "Motion");

**WHEREAS**, on October 19, 2021, Defendants filed their opposition to the Motion;

**NOW THEREFORE, THE COURT FINDS AND ORDERS AS FOLLOWS**:

1.     The Motion is **DENIED**.

2.     Under Court of Chancery Rule 62(c) and Supreme Court Rule 32, this Court has discretion to grant an injunction with respect to its judgment pending appeal.  In exercising that discretion, the Court is guided by the so-called *Kirpat* factors.[2]  Those factors direct the Court to: (i) make a preliminary assessment of the movant's likelihood of success on appeal; (ii) assess whether the movant will suffer irreparable harm if the injunction is not granted; (iii) assess whether any other interested party will suffer substantial harm if the injunction is granted; and (iv) consider whether the public interest will be served if the injunction is granted.[3]

---

[2] *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356 (Del. 1998); *see also Gradient OC Master, Ltd. v. NBC Universal, Inc.*, 2007 WL 3326080, at ¶ 12 (Del. Ch. July 20, 2007) (ORDER) (applying *Kirpat* in the context of Rule 62(c)).

[3] *Kirpat*, 741 A.3d at 357.

3.     When considering the *Kirpat* factors, because the trial court is asked to assess the strength of its own reasoning and judgment, "the 'likelihood of success on appeal' prong cannot be interpreted literally or in a vacuum."[4]  Instead, "[i]f the other three factors strongly favor interim relief, then a court may exercise its discretion to reach an equitable resolution by granting a[n] [injunction] if the petitioner has presented a serious legal question that raises a 'fair ground for litigation and thus more deliberative investigation.'"[5]  With this guidance in mind, the court often considers the first three factors before assessing whether the movant has presented a question that raises a fair ground for review by our Supreme Court.[6]

4.     In applying the *Kirpat* factors, the court must remember that they "are not a checklist; they are balanced with 'all of the equities involved in the case together.'"[7]  "Such a balancing of equities is particularly complex when, as here, the interests at issue are not limited to an award of money."[8]  Indeed, "an application for an injunction pending an appeal is likely to fail if, as is often the case, the Court has

---

[4] *Id.* at 358.

[5] *Id.* (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

[6] *E.g.*, *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *2 (Del. Ch. Nov. 7, 2013).

[7] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *11 (Del. Ch. Sept. 7, 2010) (citing *Kirpat*, 741 A.3d at 358)).

[8] *Paine Webber Ltd. P'ship Litig.*, 1997 WL 118401, at *1 (Del. Ch. Mar. 4, 1997).

already denied an application for injunctive relief."[9] This is so because "similar relief already has been sought and denied on the merits in the first instance."[10] Given this dynamic, "the entry of an injunction pending an appeal" that would mimic or expand the request for relief already rejected "is an unusual occurrence."[11]

5. Under *Kirpat* factor (ii), Plaintiffs argue they will suffer irreparable harm if the injunction is not granted because, without it, their appeal likely cannot be decided by the Delaware Supreme Court prior to CytoDyn's annual meeting on October 28. Under the circumstances presented here, however, that claimed harm falls short of the irreparable harm required to support the injunction Plaintiffs seek. "The Court may deny a motion pursuant to Rule 62(c), and enforce its judgment against the party seeking appeal, even if doing so may harm that party by 'undermin[ing] its opportunity for Supreme Court review of the judgment.'"[12]

---

[9] 2 Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.09, 18-21 (2d ed. 2020).

[10] *Id.*

[11] *Id.*

[12] *Lynch v. Gonzalez*, 2020 WL 5648567, at *4 (Del. Ch. Sept. 22, 2020) (citing *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2011 WL 4823569, at *3 (Del. Ch. Aug. 16, 2011)); *see also Bond Purchase, L.L.C. v. Patriot Tax Cred. Props., L.P.*, 1999 WL 669358, at *8 (Del. Ch. Aug. 16, 1999) ("Defendants claim that denying a stay would result in irreparable harm to them because . . . [it] would provide Plaintiff with final relief and moot Defendants' current appeal. If I were to accept Defendants' argument, every Order of this Court that contains a form of injunctive relief would justify a stay of that Order pending appeal on the basis of Rule 62(c).").

4

While I recognize that prohibiting a stockholder from exercising her franchise rights can amount to irreparable harm,[13] in this case, any such harm is, in large measure, self-inflicted.[14] Because Plaintiffs chose to submit their nomination notice on the eve of the deadline set by the advance notice bylaw, and then chose to wait weeks after that submission before they initiated litigation, this case did not reach Chancery until August 24.[15] Since then, the Court has been fully accommodating, including by ordering expedited proceedings, scheduling trial as requested, and entering an opinion three business days after the matter was submitted for decision.[16] Inexplicably, no appeal has been filed, and no expedited treatment has been sought. Plaintiffs cannot now, claiming irreparable harm, ask the Court to grant a motion that essentially affords them the injunctive relief they were denied in the plenary

---

[13] *E.g.*, *Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814, at *3 (Del. Ch. Apr. 20, 2012) ("Plaintiffs would be irreparably harmed by having to wait 13 months to effectuate change."); *Aprahamian v. HBO & Co.*, 531 A.2d 1204, 1208 (Del. Ch. 1987) ("Plaintiffs have expended considerable sums of money on this proxy contest. If the meeting is postponed, arguably, the proxies solicited and returned in good faith by the stockholders will become void and a postponement may well defeat the efforts of plaintiffs and the will of the majority of the stockholders. Irreparable harm may be assumed in such a case."). *But see* Defs.' Opp'n to Pls.' Mot. for Inj. Pending Appeal ("DO") (D.I. 71) at 7–10 (arguing persuasively that the cases Plaintiffs cite are inapposite).

[14] Opinion at **2, 17–23.

[15] D.I. 1.

[16] D.I. 67.

action in order to relieve time pressure caused by a build-up of steam they themselves helped to generate.

6.     Factor (iii) of *Kirpat* weighs heavily in favor of Defendants because they will experience substantial harm if the Motion is granted.  Again, if Defendants are enjoined from holding their annual meeting, then Plaintiffs will have obtained much if not all of the relief they sought and were denied after a trial on the merits. Plaintiffs lost after trial.  That means they were afforded an opportunity to prove that Defendants breached the advance notice bylaw by rejecting Plaintiffs' nomination notice, but they failed to present sufficient evidence to prove that claim.  Given that the very purpose of an advance notice bylaw is to "permit orderly . . . election contests,"[17] to deny CytoDyn the benefit of its advance notice bylaw by forcing a delay of its annual meeting, particularly after it prevailed at trial, would cause harm to the Company.

7.     Not only would an injunction pending appeal frustrate the very purpose of the duly enacted advance notice bylaw in this case, it would also likely facilitate "an attempt to circumvent" the substance of the Opinion.[18]  Even if the attempt is

---

[17] *BlackRock Credit Allocation Income Tr. v. Saba Cap. Master Fund, Ltd.*, 224 A.3d 964, 980 (Del. 2020).

[18] *Newcastle P'rs, L.P. v. Vesta Ins. Gp., Inc.*, 887 A.2d 975, 979 (Del. Ch. 2005).  As Defendants observe, Plaintiffs bid to force CytoDyn to delay its annual meeting might reasonably be viewed as a belated attempt at a do-over.  Regardless of the results of the appeal, having disrupted and delayed the conduct of the duly noticed annual meeting,

the product of good faith, the fact remains that Plaintiffs had an opportunity to prove that the annual meeting should not proceed without the inclusion of their slate of director nominees but their proof fell short. They may seek an appeal of that determination but, in doing so, they may not cause the Company to suffer the very harm Defendants avoided by prevailing at trial.

8. Defendants would be harmed in other respects as well. CytoDyn's stockholders have been informed that a meeting will be held on October 28.[19] All steps necessary to conduct that meeting have been taken. Cancelling it a week before it is to go forward would result in substantial costs and serious confusion.

9. Factor (iv) of *Kirpat* asks the Court to determine whether the public interest will be served if the Motion is granted. Who controls the board of directors, although "critically important to the litigants" and other stakeholders, implicates the "private interests of particular corporate constituencies," not the public interest.[20] To the extent the public interest is served in defending stockholder rights, which rights are "sacrosanct,"[21] Plaintiffs' interest in exercising their franchise is balanced

---

Plaintiffs may well have the opportunity to submit a new nomination notice that corrects the significant deficiencies in their failed notice. *See* DO at 11–12.

[19] DO at 11.

[20] *Klaassen*, 2013 WL 5967028, at *3.

[21] *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012).

in this case by the order and predictability that the advance notice bylaws seek to create and that Defendants and other CytoDyn stockholders are entitled to under the Opinion. Plaintiffs will have their chance to nominate their director slate, and to do so in compliance with the advance notice bylaw, at CytoDyn's 2022 annual meeting.[22]

10.     Based on the foregoing, I am satisfied that *Kirpat* factors (ii)–(iv) and the balance of equities weigh in favor of denying the Motion. And Factor (i) cannot save Plaintiffs' Motion because "the other three factors" do not "strongly favor interim relief," and granting the Motion would not otherwise be an "equitable resolution."[23] Indeed, in my view, factor (i) weighs in favor of denying the Motion.

---

[22] Plaintiffs' attempt to liken this case to *Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012) is misleading. In *Icahn*, plaintiffs sought and were granted expedited scheduling of their claim to cause the target company to waive its advance notice bylaw because the company was facing a "critical time" after it was presented with an acquisition proposal, resisted by the board, that would have delivered a substantial premium to stockholders. *Id*. at *3. According to Plaintiffs, CytoDyn is also confronting a "critical time" as evidenced by its recent disclosure that "there is substantial doubt as to the Company's ability to continue as a going concern." Motion at 7. Of course, Plaintiffs neglect to mention that the Company has made that identical public disclosure on a regular basis for more than a decade. DO at 10 (citing multiple examples of the prior disclosures). This is not at all surprising given that CytoDyn is a clinical stage biopharmaceutical company that has yet to bring a product to market.

[23] *Kirpat*, 741 A.2d at 358.

The Opinion did not break new legal ground or radically extend settled law.[24] Following our Supreme Court's clear direction in *Saba*,[25] in the absence of evidence of manipulative behavior by Defendants that might have affected how Plaintiffs chose to prepare and submit their nomination notice, I determined that *Blasius* did not apply to my construction and application of an advance notice bylaw validly enacted on a proverbial clear day.[26] I did, however, reserve room for Plaintiffs to invoke equitable considerations of fairness to ensure the shareholder franchise is protected.[27] Ultimately, however, Plaintiffs failed to prove any basis to invoke equity to force CytoDyn's board of directors to accept a facially deficient nomination

---

[24] Plaintiffs point out that I stated in the Opinion's introduction that "the law in this area may not be as settled as one would think." Opinion at *1. While Plaintiffs correctly quote the Opinion, they fail to quote it completely or in context. The entire sentence reveals that the Court was simply expressing surprise that the parties could not agree on the standard of review given "the density of our jurisprudence in the 'advance notice bylaw' space." *See id.* ("In a twist that suggests the law in this area may not be as settled as one would think, particularly given the density of our jurisprudence in the 'advance notice bylaw' space, the parties have offered two very different perspectives of the standard of review by which I should review the evidence and ultimately adjudicate the dispute.").

[25] *BlackRock Credit Allocation Income Tr. v. Saba Cap. Master Fund, Ltd.*, 224 A.3d 964 (Del. 2020).

[26] Opinion at **13–14.

[27] *Id.* at *15; *see Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971) ("[I]nequitable action does not become permissible simply because it is legally possible.").

notice. This case was decided on the facts, a dynamic that offers a much narrower space in which to ask our Supreme Court to overturn a trial court's judgment.[28]

DATED: October 20, 2021

_/s/ **Joseph R. Slights III**_
Vice Chancellor

---

[28] Opinion at *2 ("Applying the unambiguous terms of the advance notice bylaw, it is clear Plaintiffs' Nomination Notice fell short of what was required."); *id.* at *12 ("By a preponderance of the evidence, I conclude that Plaintiffs' Nomination Notice was deficient and there is no basis in equity to excuse the deficiency.").